IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **CHRISTOPHER G. PALMER,** | * |
| Plaintiff, | * |
| v. | * Civil No. RWT 14-0897 |
| **PRINCE GEORGE'S COMMUNITY COLLEGE,** | * |
| Defendant. | * |

## MEMORANDUM OPINION

Plaintiff Christopher Palmer claims that Defendant Prince George's Community College discriminated against him on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ECF No. 1. Federal antidiscrimination laws protect employees from discrimination based on certain protected characteristics, including race. However, Title VII does not protect employees from a bad relationship with a co-worker that is unrelated to race. Palmer has presented evidence that he may have suffered from the latter, but because he has failed to produce sufficient evidence that he was discriminated against because of his race, the Court must grant summary judgment to Defendant.

## BACKGROUND

### I.   Facts

Plaintiff, an African-American male, was employed in the Audio/Visual Technology Services ("AVTS") office at Prince George's Community College ("PGCC") in Largo, Maryland. ECF No. 1 at 5. His job responsibilities included "setting up audio visual [equipment] in classrooms, and meetings, taking deliveries from professors, and maintaining

audio visual [equipment] reliability." ECF No. 26 at Ex. 5.  Plaintiff alleges that he endured a racially hostile work environment and was retaliated against for protected activity.  ECF No. 1.  In particular, Plaintiff alleges that while working in the AVTS office, he "was racially harassed by a co-worker [Eric Gamboa, an Asian-American male], [P]laintiff's workplace environment [was] manipulated by the same co-worker, and [Plaintiff] was made to work in a hostile environment." ECF No. 1 at 6.  Much of the Complaint focuses on actions taken by Defendant toward Plaintiff after allegations were made that Plaintiff had threatened and hit his coworker.  Plaintiff asserts, among other things, that he was treated unfairly by Defendant's human resources department, that he was not given access to any campus police investigation documents, and that he was ordered to undergo anger management counseling.  Plaintiff alleges that he "was suspended without pay for a period of [three] weeks for nothing other than…allegations/outright lies." ECF No. 1 at 11.

### a. Claims of Racial Harassment

Plaintiff's hostile work environment claim is based on three specific incidents where he alleges that he was discriminated against because of race.  The first incident occurred on August 9, 2009, Plaintiff's first day at the ATVS office.  Plaintiff's co-worker, Eric Gamboa ("Gamboa"), began to harass him within five minutes. ECF No. 26, Ex. 1 at 6.  Specifically, Plaintiff claims that Gamboa found a TV on a cart and put in the movie, Beverly Hills Cop[1]. *Id*. at 6-7.  Plaintiff claims that Gamboa fast forwarded the tape to a specific section of the movie where racial slurs were used. *Id*. at 7.  Plaintiff asserts that Gamboa played that specific portion of the movie repeatedly until their supervisor, who had been watching the entire incident between the two men, admonished Gamboa and told him to stop. *Id*.

---

[1] Beverly Hills Cop (Paramount Pictures 1984).

The second incident occurred a few years later "around 2012...but could have happened in 2011." *Id*. at 13. Plaintiff was eating on his break in an employee break room and Gamboa played a portion of the movie, The Players Club[2], where racial slurs were used. *Id*. at 11. Plaintiff claims that both instances were reported to human resources. *Id*.

The third incident occurred "in the 2012 range" in the presence of Plaintiff's supervisor. *Id*. at 20. Plaintiff claims that his supervisor's friend, Corey White ("White"), his supervisor and Plaintiff were conversing when Plaintiff mentioned that he almost attended Clemson University, where White was going for work. *Id*. at 19. White allegedly responded, "damn tar babies, can't get away from them wherever I go." *Id*. Plaintiff alleges that he stayed quiet about this incident and did not report it at the time. *Id*. at 22.

Plaintiff does not point to other specific incidents that involved race. He alleges that Gamboa continued to be "really obsessed with needing for me to be this character, race or character he had in mind." *Id*. at 14. Plaintiff claims that Gamboa would "take work assignments and … [Plaintiff] couldn't accomplish the job because [Gamboa] had taken certain equipment." *Id*. at 14-15. However, Plaintiff also admitted that these incidents "may have not have been anything to do with race." *Id*. at 15.

### b. Workplace confrontation on February 28, 2013

On February 28, 2013, Plaintiff and Gamboa were working an event but Gamboa went "missing in action" and as a result Plaintiff had to do the majority of the work. *Id*. at 39. While Plaintiff searched for boxes to put the extra equipment in so that it could be taken back to the office and stored, a laptop went missing. *Id*. at 40-41. Plaintiff realized that Gamboa had taken the laptop and left everything else that he was supposed to help Plaintiff with. *Id*. at 41. After Plaintiff had taken down some of the equipment, he approached Gamboa in the hallway and

---

[2] The Players Club (New Line Cinema 1998).

asked him if he could speak to him. *Id*. At that point, they went into the bathroom; what happened inside is disputed. Gamboa alleges that Plaintiff grabbed him, slammed him against the wall and threatened him. Plaintiff alleges that all he did was ask Gamboa to leave him alone. *Id*. at 41-46.

A few days after the incident, Plaintiff went to work as scheduled and as he was going into work, his supervisor yelled, "I know you hit him, I just can't prove it!" ECF No. 29 at 14. Following an investigation, both Plaintiff and Gamboa were disciplined. ECF No. 26, Ex. 15-16. Among other things, Plaintiff was ordered to complete anger management counseling. ECF No. 26, Ex. 16 at 2. The investigation did reveal that Gamboa "on at least two instances used racially-charged images and language that offended [Plaintiff] and contributed to [the] poor work relationship." ECF No. 26, Ex. 15 at 1.

### c. Plaintiff's suspension and resignation

Plaintiff alleges that the investigation was used to collect evidence to form an image of him as a hostile employee. ECF No. 29 at 15. The investigation revealed allegations that Plaintiff had made threats to his coworkers in the past. *Id*. Plaintiff claims that this information should have been brought to light during his grievance hearing so that it could be examined. *Id*. Additionally, Plaintiff alleges that information was illegally withheld because he was not given a copy of the police report and any information alleging unprofessional behavior on his part. *Id*.

However, Plaintiff chose not to comply with the mandatory anger management counseling requirement. Because of this lack of compliance, Plaintiff was suspended from work on July 3, 2013, with the opportunity to be reinstated after completing counseling. ECF No. 26, Ex. 22. A little over a month later, on August 9, 2013, Plaintiff resigned his position indicating that he could no longer tolerate the continuation of hostility, false entitlement, workplace

manipulation, racial prejudice and "having to work in an environment that is operated like a slave plantation." ECF No. 26, Ex. 24.

## STANDARD OF REVIEW

Summary judgment is proper if there are no issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 302 (4th Cir. 2006). A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Liberty Lobby, Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the non-moving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248-49. However, the non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1986). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

The court may only rely on facts supported in the record, not simply assertions in the pleadings, in order to fulfill its "affirmative obligation… to prevent 'factually unsupported claims or defenses' from proceeding to trial." *Felty v. Grave-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex*, 477 U.S. at 323-24). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 244 (emphasis added). However, "if the

evidence is merely colorable or not significantly probative, it may not be adequate to oppose entry of summary judgment." *Thompson Everett, Inc., v. Nat'l Cable Adv.*, 57 F.3d 1312, 1323 (4th Cir. 1995).

## **ANALYSIS**

PGCC cannot be held liable for Gamboa's and White's actions and attitude toward Plaintiff. PGCC did not retaliate against Plaintiff; PGCC was simply following its procedures when it reprimanded both Plaintiff and Gamboa following an investigation into a disputed incident. PGCC did take Plaintiff's allegations of racial epithets seriously and conducted an investigation that led to the reprimand of both men. Plaintiff also resigned voluntarily. ECF No. 26, Ex. 24. Plaintiff fails to provide sufficient evidence to establish either a hostile work environment or retaliation claim.

### I.    Hostile Work Environment

To prove that he suffered from a hostile work environment on the basis of race, Plaintiff must provide evidence showing: (1) unwelcome conduct; (2) based on Plaintiff's race; (3) which is sufficiently severe or pervasive to alter Plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to his employer. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. Md. 2015). Additionally, "viable hostile work environment claims often involve repeated conduct . . . a single act of harassment may not be actionable on its own . . . However, an isolated incident of harassment can amount to discriminatory changes in the terms of conditions of employment, if that incident is extremely serious." *Id*.

In assessing the severity of the harassing conduct, the status of the harasser plays a factor. For example, "a supervisor's use of racial epithets impacts the work environment far more

severely than use by co-equals." *Id*. at 278. On the other hand, "if the harassing employee is the victim's co-workers, the employer is only liable if it was negligent in controlling working conditions." *Id*. The duty falls on the victim of the harassment to report the harassing behavior to his employer. *Id*.

It is clear from the record that the racial slurs in the movie Gamboa played were unwelcomed and based on Plaintiff's race. The same can be said for the incident involving White. However, only the two incidents with Gamboa were reported to Defendant's human resources department[3]. As the Fourth Circuit stated in *Boyer-Liberto*, hostile work environment claims often involve repeated conduct. *E.g.*, *Boyer-Liberto*, 786 F.3d at 277. In this case, the two incidents with Gamboa were years apart and Plaintiff cannot point to any other incidents that involved Plaintiff's race. Taken together without any intervening incidents, this can hardly be said to be repeated conduct.

Even if Plaintiff were to establish that the unwelcome conduct based on his race severely altered the conditions of his employment, Plaintiff fails to establish a claim of hostile work environment on the fourth prong; the unwelcomed conduct is not imputable to PGCC. As the Fourth Circuit noted in *Boyer-Liberto*, if the harasser is the victim's co-worker and the two are equals, the employer is only liable if it was negligent in controlling working conditions. *Id.* at 278. Plaintiff claims that his supervisor knew of the racial epithets that were used but did "not do anything about it." ECF No. 26, Ex. 1 at 17.

On the contrary PGCC took reasonable steps to control working conditions. Immediately after the first incident, Gamboa was verbally reprimanded and told to stop the harassing behavior

---

[3] PGCC cannot be held liable for the White incident, because, by not reporting the incident to the human resources department, Plaintiff "unreasonably failed to take advantage of the preventive or corrective opportunities that [PGCC] provided." *Vance v. Ball State University*, 133 S. Ct. 2434, 2439 (2013); *see also* ECF No. 26, Ex. 7 (describing PGCC's harassment policy and procedure).

towards Plaintiff. *Id*. at 7. It was at least two years before the second incident occurred. *Id*. at 13. No other racially-charged incident occurred after the second incident.

Following the disputed altercation on February 28, 2013, of which there is no evidence of racially-motivated conduct, PGCC conducted an investigation and noted that Gamboa "on at least two instances used racially-charged images and language that offended [Plaintiff] and contributed to [the] poor work relationship." ECF No. 26, Ex. 15. As a result of their findings, PGCC reprimanded Gamboa and restricted Gamboa's movement and assignments to avoid further conflict with Plaintiff. *Id*. Essentially, Plaintiff seeks to have two isolated racially-charged incidents occurring years apart (and one non-racially charged incident) serve as proof that PGCC was negligent in controlling working conditions. However, the isolated nature of these incidents serves as proof that PGCC was reasonable in controlling its work environment. *See* Employment Law § 2:12 (5th ed.) ("the cessation itself is good evidence that the steps taken to stop the harassment were reasonable").

**II.     Retaliation**

Plaintiff also claims that PGCC retaliated against him and forced him to resign. To establish a prima facie case of retaliation, "a plaintiff must prove three elements: (1) that [he] engaged in protected activity; (2) that [his] employer took an adverse employment action against [him]; and (3) that there was a causal link between the two events*." E.g.*, *Boyer-Liberto*, 786 F.3d at 281. Additionally, "an employee is protected from retaliation when [he] opposes a hostile work environment" and "from retaliation for opposing an isolated incident of harassment when [he] reasonably believes that a hostile work environment is in progress" and the isolated incident is "physically threatening or humiliating." *Id*. at 282.

The Supreme Court has recently clarified the requirement for an adverse employment action in the retaliation context. The scope of what constitutes an adverse employment action for discrimination purposes is not infinite—"a plaintiff must show that a reasonable employee would have found the challenged action *materially adverse,* which ... means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). In *White*, the court found that reassigning the petitioner to a less desirable job and a period of suspension without pay was materially adverse. *Id*. at 73.

Plaintiff engaged in protected activity when he reported the alleged racial slurs by Gamboa and brought them to the attention of PGCC. *E.g.*, *Boyer-Liberto*, 786 F.3d at 281. However, Plaintiff's claim of retaliation is based on the outcome of PGCC's investigation of the February 28, 2013 incident. The investigation conducted by PGCC found that Gamboa had used racial slurs in the past and that Plaintiff had threatened his coworkers as well. ECF No. 26, Ex. 15-16. As a result, PGCC asked both Plaintiff and Gamboa to attend counseling sessions; Plaintiff was not singled out. Here, Plaintiff fails to establish how required counseling sessions were an adverse employment practice—he was not demoted or terminated but only required to attend anger management counseling. Directions to attend counseling typically do not constitute adverse employment actions. *Prince-Garrison v. Maryland Dep't of Health & Mental Hygiene*, 317 F. App'x 351 (4th Cir. 2009).

Even though he was given multiple opportunities, Plaintiff failed to attend the counseling sessions mandated by PGCC. ECF No. 26, Ex. 23. Despite Plaintiff's failure to complete the counseling sessions, PGCC chose not to terminate him. Rather, he was suspended until he could complete at least one counseling session. *Id*. at Ex. 22. Instead of taking advantage of the

9

opportunities that PGCC gave him, Plaintiff took it upon himself to resign. ECF No. 26, Ex. 24. Plaintiff fails to establish a prima facie case of retaliation.

## **CONCLUSION**

Plaintiff has failed to produce any evidence which would allow a reasonable jury to find in his favor. Accordingly, the Court will grant the Defendant's Motion for Summary Judgment [ECF No. 26] and enter judgement in favor of Defendant. A separate Order follows.


Dated:  August 4, 2015                                              /s/
                                                            ROGER W. TITUS
                                                      UNITED STATES DISTRICT JUDGE